## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. _12-cv-00284-RCB-CBS_

UNITED STATES OF AMERICA,

      Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

      Defendant.

---

**CONSENT DECREE**

---

United States v. Union Pacific Railroad Company

## TABLE OF CONTENTS

I. JURISDICTION AND VENUE ............................................................................................. -2-

II. APPLICABILITY ........................................................................................................... -3-

III. DEFINITIONS ............................................................................................................... -4-

IV. CIVIL PENALTY .......................................................................................................... -6-

V. COMPLIANCE REQUIREMENTS .................................................................................... -7-

VI. REPORTING REQUIREMENTS ..................................................................................... -15-

VII. STIPULATED PENALTIES ......................................................................................... -19-

VIII. FORCE MAJEURE ................................................................................................... -22-

IX. DISPUTE RESOLUTION ............................................................................................. -24-

X. INFORMATION COLLECTION AND RETENTION ......................................................... -26-

XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS............................................... -29-

XII. COSTS ..................................................................................................................... -30-

XIII. NOTICES ................................................................................................................ -31-

XIV. EFFECTIVE DATE ................................................................................................... -32-

XV. RETENTION OF JURISDICTION ................................................................................. -32-

XVI. MODIFICATION ...................................................................................................... -32-

XVII. TERMINATION ....................................................................................................... -33-

XVIII. PUBLIC PARTICIPATION ...................................................................................... -34-

XIX. SIGNATORIES/SERVICE .......................................................................................... -34-

-ii-

XX.   INTEGRATION ................................................................................................................ -35-

XXI.  FINAL JUDGMENT ......................................................................................................... -35-

XXII. APPENDICES .................................................................................................................... -35-

United States v. Union Pacific Railroad Company

A.    Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree alleging that Defendant Union Pacific Railroad Company ("Union Pacific" or "Defendant") is liable for civil penalties and injunctive relief pursuant to the Clean Water Act, as amended ("CWA" or "the Act"), 33 U.S.C. §§ 1251-1387, resulting from the unauthorized discharge of oil and coal from railcars and locomotives it owned and operated in Colorado, Utah and Wyoming (collectively "the Three States") into waters of the United States or adjoining shorelines, the failure to comply with Spill Prevention, Control and Countermeasure ("SPCC") and Facility Response Plan ("FRP") regulations issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), at railyards it owns and operates in the Three States, and the failure to comply with CWA storm water discharge permits for railyards it owns and operates in Utah.

B.    Union Pacific corrected a portion of the alleged SPCC, FRP and stormwater discharge permit violations.  Union Pacific represents that no unauthorized discharges exist at this time at from its railcars and locomotives or at its railyards in the Three States.

C.    Defendant does not admit any liability to the United States arising out of the facts alleged in the Complaint.  Nothing in this Consent Decree shall constitute or be construed as an admission of liability or wrongdoing or as an admission of fact or law by Union Pacific, or as a waiver of any right or defense Union Pacific may have, including the right to contest CWA jurisdiction over a particular waterway in any future action.

D.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E).  The Court has personal jurisdiction over the Parties to this Consent Decree.  Venue lies in the District of Colorado pursuant to Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395(a), because several of the acts or omissions giving rise to the violations alleged in the Complaint occurred in the District of Colorado and because Defendant does business in the District of Colorado.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to this Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

<u>United States v. Union Pacific Railroad Company</u>

## II. <u>APPLICABILITY</u>

2.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and its successors and assigns.

3.      No transfer of ownership or operation of the Facilities identified in Appendix A, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 8, the United States Attorney for the District of Colorado and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices). Any attempt to transfer ownership or operation of the Facilities identified in Appendix A, without complying with this Paragraph constitutes a violation of this Decree. Union Pacific may identify all or a portion of any proposed written agreement transferring ownership or operation of the property as "confidential business information" and EPA and the United States shall handle all or a portion of such agreement identified as confidential business information in accordance with applicable law and regulations.

4.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent

Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

6.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Complaint" shall mean the complaint filed by the United States in this action;

b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXII);

c.     "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.     "Defendant" shall mean Union Pacific Railroad Company;

e.     "DOJ" shall mean the United States Department of Justice;

-4-

   f.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

   g.  "Effective Date" shall have the definition provided in Section XIV;

   h.  "Equipment Deployment Exercise" shall mean an exercise where response equipment is deployed to a specific site and operated in its normal operating medium.

   i.  "Facility(ies)" shall mean any of Defendant's railyards located in Colorado, Utah or Wyoming and identified in Appendix A;

   j.  "FRP Requirements" shall mean 40 C.F.R. Part 112, Subpart D, including appendices.

   k.  "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

   l.  "Parties" shall mean the United States and Defendant;

   m.  "Section" shall mean a portion of this Decree identified by a Roman numeral;

   n.  "SPCC Requirements" shall mean 40 C.F.R. Part 112, Subparts A, B, and C, including appendices.

   o.  "Spill Management Tabletop Exercise" shall mean an exercise of the response plan and the spill management team's response efforts without the actual deployment of response equipment.

   p.  "Storm Water Requirements" shall include all requirements of the Clean Water Act and its implementing regulations that apply to discharges of storm water,

including but not limited to sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342, 40

C.F.R. §§ 122.21 and 122.26, any corresponding statutes or regulations of the Three States, and

the requirements of any storm water discharge permit issued by any of the Three States as part of

its EPA-approved National Pollutant Discharge Elimination System program.

        q.    "United States" shall mean the United States of America, acting on

behalf of the Environmental Protection Agency.

## IV. CIVIL PENALTY

        7.    No later than 30 Days after the Effective Date of this Consent Decree,

Defendant shall pay the sum of $1,500,000 as a civil penalty, together with interest accruing

from the date on which the Consent Decree is lodged with the Court, at the rate specified as of

the date of lodging in 28 U.S.C. § 1961.

        8.    The penalty shall be paid in two separate payments. One payment shall be

in the amount of $1,380,000; Defendant shall designate this amount to be deposited in the Oil

Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9609(b)(8). The

other payment (not for the Oil Spill Liability Trust Fund) shall be in the amount of $120,000.

Defendant shall make each payment by FedWire Electronic Funds Transfer ("EFT" or wire

transfer) to the U.S. Department of Justice in accordance with written instructions to be provided

following lodging of the Consent Decree to Defendant by the Financial Litigation Unit of the

U.S. Attorney's Office for the District of Colorado, 1225 17th Street, Suite 700, Denver, CO

80202, Tel: (303) 454-0100. At the time of each payment, Defendant shall send a copy of the

EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall reference the civil action number assigned to this case and DOJ case number 90-5-1-1-09194, (1) by email to CINWD_AcctsReceivable@epamail.epa.gov, (2) by U.S. mail to the EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268, and (3) by U.S. mail to the representatives of the U.S. Department of Justice and EPA designated in Section XIII (Notices). Any payment received by the U.S. Department of Justice after 4:00 P.M. (Eastern time) will be credited on the next business day.

9. Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS

### A. SPCC Plan Deficiencies

10. Within 60 days of the Effective Date, in accordance with Section VI (Reporting Requirements) and Section XIII (Notices), Defendant shall provide documentation that it has revised and/or corrected the SPCC Plans as indicated for the Facilities listed in this paragraph. That documentation shall include the corrected text from the SPCC Plans, relevant calculations, invoices, photos and such other information as reasonably necessary for EPA to determine whether the SPCC Plan deficiencies alleged in the Complaint have been corrected, along with the date each SPCC Plan was corrected.

a. Burnham Yard.

<u>United States v. Union Pacific Railroad Company</u>

   i. Provide an adequate discharge prediction for TNKD-0216, specifically the flow direction on the tank description page.

   ii. Correct containment volume listed for TNKD-0216.

   iii. Prepare a new SPCC Plan description for the technical change to the piping connected to TNKD-0216.

   iv. Provide an adequate discharge prediction, specifically the flow direction for TNKD-0125, on the tank description page.

   v. Prepare a new SPCC Plan description including the technical change to the containment of TNKD-0596 made January 9, 2009 and the removal of used oil collection area drums.

  b. <u>East Portal Moffat Yard</u>.  Prepare a new SPCC Plan reflecting the current storage capacity at the yard.

  c. <u>Grand Junction Yard</u>. Submit a chronological description of SPCC Plan revisions that reflect the remodeling activities at this yard in 2007 and 2008.

  d. <u>Kremmling Yard</u>.  Submit a chronological description of SPCC Plan revisions that reflect the oil storage capacity reductions to the yard making it no longer subject to the SPCC Requirements.

  e. <u>Pueblo Yard</u>.  Provide adequate discharge predictions that indicate what direction the spill would flow if it occurs outside of containment.

  f. <u>Rifle Yard</u>.

   i. Submit an SPCC Plan in response to EPA's February 2010 letter.

ii.  Prepare a new SPCC Plan reflecting the storage capacity at the yard.

g. Salt Lake City North Yard.  Prepare and submit a new SPCC Plan description to reflect that the new secondary containment in the MSH-4 area was completed December 5, 2008.

h. Cheyenne Yard.  Prepare a new SPCC Plan which reflects all the secondary containment changes that occurred in January 2011.

i. Laramie Yard.  Prepare a new SPCC Plan which reflects all the secondary containment changes that occurred in January 2011.

j. Green River Yard.  Provide a new SPCC Plan description for the security measures to be implemented for Area 4.

k. Rawlins Yard. Submit a chronological description of SPCC Plan revisions that reflect the container moves and secondary containment changes since 2005.

**B. SPCC Technical Violations and Corrective Actions**

11.  Within 60 days of the Effective Date, in accordance with Section VI (Reporting Requirements) and Section XIII (Notices), and subject to Section VI, Part B (Review and Approval) Defendant shall take corrective actions to address the technical violations alleged in the Complaint at the following Facilities.  Within 90 days of the Effective Date, Defendant shall provide documentation the corrective actions have been taken, which may include corrected text from the SPCC Plans, relevant calculations, invoices, photos, and such other information as reasonably necessary for EPA to determine whether the deficiencies alleged in the Complaint have been corrected in accordance with SPCC requirements, along with the date each correction was made.

    a.    Burnham Yard.

        i. Implement secondary containment measures for piping connected to TNKD-0208, TNKD-0209, TNKD-0210, TNKD-0211, TNKD-0212, TNKD-0213, TNKD-0214, TNKD-0215, and TNKD-0216.

        ii. Confirm that the secondary containment for TNKO-0125 is sufficiently impervious or, alternatively, provide documentation of having replaced this tank with a new double-walled tank that has adequate loading/unloading containment.

    b.    Grand Junction Yard.

        i. Provide properly sized secondary containment for the used filter bin or, alternatively, provide documentation that this filter bin is no longer in service.

        ii. Provide properly sized secondary containment for the grease totes in Area 1.

    c.    Pueblo Yard.

        i. Implement adequate secondary containment for the loading/unloading areas for TNKG-0068 and TNKG-0085.

        ii. Implement appropriate form of overfill protection for TNKG-0085.

    d.    Ogden Yard. Address the visible discharges of lube oil in the pump house, around the foundation of the pump house, and the connecting valve associated with TNKO-9903.

    e.    Provo Yard.

        i. Implement an appropriate form of overfill protection for TNKD-9605 and TNKG-9701.

<u>United States v. Union Pacific Railroad Company</u>

ii.   Implement security measures for TNKO-0402.

f.     <u>Roper Yard</u>. Implement an appropriate form of overfill protection for TNKO-0415 and TNKO-5011.

g.     <u>Green River Yard</u>.

i.   Provide properly sized secondary containment for the 55-gallon drums in Area 3, or alternatively, provide documentation that no drums in Area 3 are subject to SPCC regulation.

ii.   Provide properly sized secondary containment for the grease totes in Area 4.

iii.   Implement security measures for Area 4.

iv.   Install spill kits or other measures for the loading/unloading areas for the track grease totes.

h.     <u>Laramie Yard</u>. Provide adequate containment for TNKD-0875 and TNKO-0393 loading/unloading operations, and or alternatively, provide documentation that these tanks have been replaced by a new convault that has adequate containment for loading/unloading operations.

i.     <u>Rawlins Yard</u>.

i.   Implement secondary containment measures for the piping between the secondary containment for TNKD-6903 and TNKD-0148 and the pump house.   Provide secondary containment measures for a portion of the aboveground piping for TNKD-0891 and for a portion of the aboveground piping for TNKO-0218.

<u>United States v. Union Pacific Railroad Company</u>

        ii.  Implement an appropriate form of overfill protection for TNKG-0142 in Area 2.

### C.  Rawlins Yard FRP Plan

12.     Within ninety (90) Days of the Effective Date Defendant shall, in accordance with Section VI (Reporting Requirements) and Section XIII (Notices), and subject to Section VI, Part B (Review and Approval), submit to EPA for approval an FRP for the Rawlins Railyard, at 300 West First St., Rawlins, WY,  that complies with all the requirements of 40 C.F.R. §§ 112.20 and 112.21, and addresses all deficiencies in the September 27, 2011, letter from EPA to Union Pacific counsel, attached as Appendix B.  Upon approval by EPA, Defendant shall fully implement the FRP.

13.     After the FRP is approved, Defendant shall update and amend the FRP and its training and drilling programs in accordance with the FRP Requirements.

14.     Within thirty (30) days of the approval of the FRP, Defendant shall conduct a Spill Management Tabletop Exercise at the Rawlins Yard.

15.     Within sixty (60) days of the approval of the FRP, Defendant shall conduct an Equipment Deployment Exercise at the Rawlins Yard.

### D.  Corrective Measures at the Burnham Yard

16.     Within the timeframes stated in Paragraphs 16.a. and 16.b. and 11, Defendant shall, in accordance with Section VI (Reporting Requirements) and Section XIII (Notices), and subject to Section VI, Part B (Review and Approval), take corrective actions to address storm water management issues at the Burnham Yard, and shall submit documentation to

<u>United States v. Union Pacific Railroad Company</u>

EPA that the corrective actions have been taken, which may include corrected text from the SPCC Plans, relevant calculations, invoices, photos and such other information as reasonably necessary for EPA to determine whether the storm water management issues have been addressed.

a. Within thirty (30) days of the Effective Date, Defendant shall revise the Storm Water Management Plan to identify the storm drains immediately adjacent to the Burnham Yard.

b. Within sixty (60) days of the Effective Date, Defendant shall submit a best management plan addressing the potential for the wastewater treatment plant area for the Burnham Yard to impact the adjacent storm drain.

**E.    Environmental Compliance Reporting**

17. No later than ten days after the Effective Date, Defendant shall notify EPA that it has designated (1) an Environmental Vice President who will be responsible for compliance with SPCC, FRP, and Storm Water Requirements at the Facilities and who will be responsible for ensuring overall compliance with this Consent Decree, and (2) an Environmental Program Manager, who will be responsible for semi-yearly program reports to the Environmental Vice President. Defendant shall provide EPA with the name, title, physical address, telephone number, and email address of each such individual. Defendant may change its Environmental Vice President and Environmental Program Manager with ten days' advance notice, including all the information required in the previous sentence, to EPA. Each successor Environmental Vice President and Environmental Program Manager shall have the same qualifications and responsibilities required by Paragraphs 17-20 of this Consent Decree.

-13-

18.    The Environmental Vice President shall have (1) authority to direct Defendant's employees and contractors and to commit Defendant's funds as necessary to ensure compliance with all SPCC, FRP, and Storm Water Requirements at all Facilities in the Three States as identified in this Consent Decree and (2) at least five years of environmental management experience.

19.    The Environmental Program Manager shall have (1) knowledge of SPCC, FRP, and Storm Water Requirements and (2) at least five years of environmental management experience.

20.    The Environmental Program Manager shall make semi-yearly written reports to the Environmental Vice President on compliance with SPCC, FRP, and Storm Water Requirements at each Facility in the Three States.  The reports shall be due no later than February 1 and August 1 of each calendar year.  Each report shall include the following, at a minimum, for the six-month period ending a month before the deadline for submitting the report: (1) a full description of any and each change in the number or capacity of any tank(s) that may affect how the SPCC or FRP Requirements apply to any Facility; (2) a list of each Facility that was not in compliance with 40 C.F.R. Part 112, if such non-compliance was not corrected within thirty (30) days of its identification, and, for each such Facility, each requirement that was not met and corrected within thirty (30) days;  (3) for any such requirement of 40 C.F.R. Part 112 that was not met, photographs and/or invoices demonstrating subsequent compliance with that requirement;  (4) a full copy of each revised SPCC plan or FRP; (5) the name and location of each (if any) Facility acquired by Defendant that is subject to SPCC, FRP, or Storm Water

United States v. Union Pacific Railroad Company

Requirements; and (6) the name, and location of each (if any) Facility owned by Defendant that is no longer subject to SPCC, FRP or Storm Water Requirements, and a description of the changes that occurred at the Facility that make it no longer subject to regulations. Such reports shall be submitted to the Environmental Vice President for a period of three (3) years following the effective date of this Consent Decree, and shall continue to be submitted for each Facility until compliance with all SPCC, FRP, and Storm Water Requirements at the Facility has been achieved for a period of six months and Union Pacific submits a report to EPA confirming such compliance.

21.     Defendant shall make each report required by this Section available to EPA or DOJ upon request, and if requested, shall provide the report within thirty (30) days.

## VI. REPORTING REQUIREMENTS

### A. Compliance Reporting

22.     Defendant shall report to EPA on the status of all actions required by Section V (Compliance Requirements) of this Consent Decree. The report shall be provided to EPA within 90 days of the Effective Date of this Consent Decree and shall be updated with a new report on a 30-day basis until compliance with all requirements of Section V (Compliance Requirements) is achieved, upon approval by EPA under Section VI, Part B (Review and Approval). If Defendant does not promptly correct any item of non-compliance within thirty (30) days of identification of such non-compliance, and continues to be out of compliance with any requirement of Section V (Compliance Requirements), the 90-day report and/or subsequent

-15-

_United States v. Union Pacific Railroad Company_

30-day reports shall identify areas of non-compliance, the circumstances which have led to non-compliance and a plan and a schedule under which Defendant proposes to correct the non-compliance. Stipulated penalties shall continue to accrue during any period of non-compliance, reported or unreported. If any report Defendant provides under this Consent Decree identifies any violation of SPCC, FRP, or Storm Water Requirements that is not a violation of Section V of this Consent Decree, Defendant will not be liable for stipulated penalties under Section VII of this Consent Decree for that violation.

       23.     In addition, Defendant shall report to EPA semi-annually, on June 1 and December 1, a description of any spill reportable under Section 311(b)(5) of the CWA, 33 U.S.C § 1321(b)(5), at or from Defendant's Facilities or its railcars or locomotives within the Three States. This semi-annual report may be submitted in a spreadsheet format or in an alternative form agreed to by the Parties and shall list:

          a.     Spill date;

          b.     National Response Center identification number (if applicable);

          c.     Narrative description of the spill location or latitude/longitude coordinates of the spill;

          d.     From what piece of equipment the spill occurred;

          e.     Spill material and quantity spilled;

          f.     Quantity recovered;

          g.     Name of water spill entered or potentially impacted (if applicable); and

<u>United States v. Union Pacific Railroad Company</u>

     h.     Description of any environmental impact from the spill.

**B. Review and Approval**

    24.    <u>Approval of Deliverables</u>. For any plan, report or document required under this Consent Decree to be submitted to EPA for approval in accordance with this Section, Defendant shall follow the procedures set forth in this Section. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

    25.    If the submission is approved pursuant to Paragraph 24.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 24.b or .c, Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX of this Decree (Dispute Resolution).

    26.    If the submission is disapproved in whole or in part pursuant to Paragraph 24.c or .d, Defendant shall within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding

-17-

Paragraph or invoke Dispute Resolution.  Any stipulated penalties applicable to the original submission, as provided in Section VII of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part,  provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission. In the event that Defendant prevails in dispute resolution with respect to any disapproved submission, Defendant shall not be required to pay any stipulated penalty.

27.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

28.    Permits.  Where any compliance obligation under this Consent Decree requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

United States v. Union Pacific Railroad Company

## VII. STIPULATED PENALTIES

29.      Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

30.      Late Payment of Civil Penalty

If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $3,000.00 per Day for each Day that the payment is late.

a.  Compliance Milestones.  The following stipulated penalties shall accrue per violation per Day of any requirement of Section V, Part B (SPCC Technical Violations and Corrective Actions), Section V, Part C (Rawlins Yard FRP Plan), or Section V, Part D (Corrective Measures at the Burnham Yard).

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1500 | 1st through 14th Day |
| $2000 | 15th through 30th Day |
| $3500 | 31st Day and beyond |

b.  The following stipulated penalties shall accrue per violation per Day for any requirement of Section V, Part A. (SPCC Plan Deficiencies).

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1000 | 1st through 14th Day |
| $1500 | 15th through 30th Day |
| $3000 | 31st Day and beyond |

31.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree and for the failure to notify of a transfer of ownership of or operation of any Facility identified in Appendix A pursuant to Paragraph 3:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $700 | 1st through 14th Day |
| $1000 | 15th through 30th Day |
| $1500 | 31st Day and beyond |

32.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

33.    Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

34. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35. Stipulated penalties shall continue to accrue as provided in Paragraph 32, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

36. If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision. Defendant shall pay no stipulated penalties with respect to any claimed violation or failure to perform on which Defendant prevails in Dispute Resolution.

37. Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 8 of this Consent Decree, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

38. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date following the date payment became due. Nothing in

21

this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

39.     Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.

## VIII. FORCE MAJEURE

40.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise best efforts to fulfill the obligations include using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

41.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA as soon as possible but not later than seventy-two (72) hours of when Defendant first knew that the event might cause a delay.   Within 7 days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all

actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure, unless EPA in its discretion determines otherwise. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

42.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

43.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

44.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of

the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 39 and 40, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX. DISPUTE RESOLUTION

45.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

46.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

47.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within thirty days after the conclusion of the informal negotiation period described in the preceding Paragraph by serving on the United States a written Statement of

Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

48.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

49.     *Defendant may seek judicial review* of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within twenty (20) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

51.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 46 pertaining

to the adequacy of the performance of work undertaken pursuant to this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.   Other Disputes.   Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 46, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

52.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 35.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).  If Defendant prevails on the disputed issue, no stipulated penalties shall be assessed or paid.

## X. INFORMATION COLLECTION AND RETENTION

53.   The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.   monitor the progress of activities required under this Consent Decree;

        b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

        c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

        d.     obtain documentary evidence, including photographs and similar data; and

        e.     assess Defendant's compliance with this Consent Decree.

54.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

55.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph, to the extent such documents, records or other information are not privileged under the attorney-client privilege, protected under the work product doctrine, or otherwise privileged or protected under applicable federal or state law.

56.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such non-privileged documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information are privileged.  If Defendant asserts such a privilege, it shall provide the following to EPA, if known:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no final documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

57.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

58.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

59.     Effective on Defendant's performance of its payment obligations in Section IV (Civil Penalty) and Section VII (Stipulated Penalties) and its full and satisfactory completion of its obligations under Section V (Compliance Requirements) and Section VI (Reporting Requirements) of this Consent Decree Defendant's liability for the civil claims of the United States alleged in the Complaint filed in this action through the date of lodging shall be resolved.

60.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 58.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 58.

61.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

62.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree or EPA's approval of any corrective action pursuant to Paragraph 24 will result in compliance with provisions of the CWA or with any other provisions of federal, State, or local laws, regulations, or permits.

63.     This Consent Decree resolves the civil claims of the United States for the violations of the CWA alleged in the Complaint through the date of the lodging of this Consent Decree. The United States releases and covenants not to sue or take administrative action against Union Pacific for the civil claims of the United States for violations of the CWA through the date of the lodging of this Consent Decree that are alleged in the Complaint.

64.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

65.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

66.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due under this Decree but not paid by Defendant.

<u>United States v. Union Pacific Railroad Company</u>

## XIII. <u>NOTICES</u>

67.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

<u>To the United States, Department of Justice</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-09194

and

<u>To EPA</u>:

Donna K. Inman, 8ENF-UFO
U.S. Environmental Protection Agency
Region 8
1595 Wynkoop St
Denver, CO 80202-1129

<u>To Defendant</u>:

Melissa B. Hagan
Regional Environmental Counsel
Union Pacific Railroad Co., Law Dept.
1001 McKinney, Ste. 900
Houston, TX 77002
(713) 220-3207
Fax: (713) 220-3215
mbhagan@up.com

68.     Any Party may, by written notice to the other Party, change its designated

notice recipient or notice address provided above.

69.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. **EFFECTIVE DATE**

70.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV. **RETENTION OF JURISDICTION**

71.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVI. **MODIFICATION**

72.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

73.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of

the burden of proof provided by Paragraph 51, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

74.    After Defendant has completed the requirements of Section V (Compliance Requirements) and Section VI (Reporting Requirements) of this Decree, has thereafter maintained satisfactory compliance with this Consent Decree for a period of five (5) years, has complied with all other requirements of this Consent Decree, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

75.    Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit a joint stipulation terminating the Decree for the Court's approval and entry.

76.    If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Section IX, until 180 days after service of its Request for Termination.

<u>United States v. Union Pacific Railroad Company</u>

## XVIII. **PUBLIC PARTICIPATION**

77.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree; unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX. **SIGNATORIES/SERVICE**

78.    The Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and each undersigned representative of Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

79.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX. INTEGRATION

80.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.   No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI. FINAL JUDGMENT

81.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII. APPENDICES

82.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the list of Union Pacific Facilities in Wyoming, Utah and Colorado.

"Appendix B" is the EPA letter to Union Pacific Counsel, dated September 27, 2011, RE: Review of Facility Response Plan for Rawlins Railyard, FRP ID# FRP08C0010, and the Facility Response Plan (FRP) Plan Review Checklist.

Dated and entered this 12th day of April, 2012.

*Rob Blackburn*

Robert E. Blackburn
UNITED STATES DISTRICT JUDGE
District of Colorado

United States v. Union Pacific Railroad Company

The Undersigned parties enter into this Consent Decree in the matter of United States v. Union Pacific Railroad Company.

FOR PLAINTIFF UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF JUSTICE:

Date: 1/19/12

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: 1-24-12

CARA M. MROCZEK
KATHERINE KANE
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
601 D. Street NW
Washington, DC 20004
Phone: (202) 514-1447
Email: cara.mroczek@usdoj.gov

The Undersigned parties enter into this Consent Decree in the matter of <u>United States v. Union Pacific Railroad Company,</u>

FOR PLAINTIFF UNITED STATES OF AMERICA, ENVIRONMENTAL PROTECTION AGENCY:

Date: 1/25/12

CYNTHIA GILES, Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 1/19/12

PAMELA J. MAZAKAS, Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 1.19.12

MARK POLLINS, Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 1/18/12

KELLY BRANTNER, Attorney Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

37

<u>United States v. Union Pacific Railroad Company</u>

The Undersigned parties enter into this Consent Decree in the matter of <u>United States v. Union Pacific Railroad Company</u>,

FOR PLAINTIFF UNITED STATES OF AMERICA, ENVIRONMENTAL PROTECTION AGENCY, REGION 8:

Date: 12 9 11

ANDREW M. GAYDOSH
Assistant Regional Administrator
Office of Enforcement, Compliance and
Environmental Justice
Region 8
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, CO 80202

Date: 12-16-11

MARGARET (PEGGY) J. LIVINGSTON
Enforcement Attorney
Region 8
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, CO 80202
Phone: 303-312-6858
Fax: 303-312-7002
Email: livingston.peggy@epa.gov

United States v. Union Pacific Railroad Company

The Undersigned parties enter into this Consent Decree in the matter of United States v. Union Pacific Railroad Company.

FOR DEFENDANT UNION PACIFIC RAILROAD COMPANY:

Date: _Dec. 23, 2011_

J. MICHAEL HEMMER
Sr. Vice President-Law & General Counsel
1400 Douglas Street, 19th Floor
Omaha, NE 68179

Agent authorized to accept service on behalf of above-signed party:

Name:      Melissa Hagan

Title:      Regional Environmental Counsel

Address:   1001 McKinney St, Ste. 900
           Houston, TX  77002

**Appendix A**

**Union Pacific Facilities in Colorado, Utah and Wyoming**

**Union Pacific Facilities in Colorado, Utah and Wyoming**

| Yard | Address | City | State | Zip Code |
|---|---|---|---|---|
| 36th Street | 3620 Wazee St. | Denver | CO | 80216 |
| Burnham | 800 Seminole Rd. | Denver | CO | 80284 |
| Denver North | 901 West 48th | Denver | CO | 80221 |
| East Portal Moffat Tunnel | Rollinsville | Rollinsville | CO | 80474 |
| Grand Junction | 2790 D Road | Grand Junction | CO | 81501 |
| Kremmling | 304 Railroad Ave | Kremmling | CO | 80459 |
| Phippsburg | 26075 Routt St. | Phippsburg | CO | 80469 |
| Pueblo | 400 West B St. | Pueblo | CO | 81003 |
| Rifle | West 1st St. | Rifle | CO | 81650 |
| Helper | 50 Depot St. | Helper | UT | 84526 |
| Ogden | 3311 Pacific Ave | Ogden | UT | 84404 |
| Provo | 900 South 476 East | Provo | UT | 84114 |
| Roper | 650 Davis Road | Salt Lake City | UT | 84119 |
| Salt Lake City North | 500 West 900 North | Salt Lake City | UT | 84101 |
| Summit | Highway 6 Access Road | Soldier Summit | UT | No Zip |
| Bill | West of Hwy 59 | Bill | WY | 82631 |
| Buford | Interstate 80 | Buford | WY | 82052 |
| Cheyenne | 121 West 15th St | Cheyenne | WY | 82001 |
| Green River | 200 West Front St. | Green River | WY | 82935 |
| Laramie | 221 Hodgemen St. | Laramie | WY | 82070 |
| Rawlins | 40 West Front St | Rawlins | WY | 82301 |

**Appendix B**

**September 27, 2011 Letter regarding Review of**

**Facility Response Plan for the Rawlins, WY Railyard**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 8**
1595 Wynkoop Street
DENVER, CO  80202-1129
Phone 800-227-8917
http://www.epa.gov/region08

September 27, 2011

Ref: 8EPR-SA

By Certified Mail- Return Receipt Requested – 7004  1350  0001 5669 0562
    Pdf document via e-mail

Melissa Hagan
Regional Environmental Counsel
Union Pacific Railroad Company
1001 McKinney, 9th Floor
Houston, TX  77002

RE:    Review of Facility Response Plan for Rawlins Railyard, FRP ID# FRP08C0010

Dear Ms. Hagan:

      The United States Environmental Protection Agency (EPA) has reviewed the Facility
Response Plan (FRP) for Union Pacific Railroad Company's (UPRR's) Rawlins, Wyoming
railyard. The FRP, which indicated that it had been revised in November of 2007, was submitted
to EPA on compact disc with letter dated June 15, 2010, from Melissa Hagan, Regional
Environmental Counsel for UPRR, to Cara Mroczek, Trial Attorney, United States Department
of Justice.

      EPA conducted its review of the Rawlins FRP in accordance with § 311(j)(5) of the
Clean Water Act, 33 U.S.C. § 1321(j)(5), and 40 C.F.R. part 112. Based on its review, EPA has
determined that the FRP does not meet the requirements of these provisions and cannot be
approved as submitted. Therefore, UPRR must revise and resubmit the FRP.

      The enclosed checklist provides details of EPA's findings. EPA has discussed these
findings with UPRR during negotiations relating to a consent decree (the Consent Decree) that
the parties expect to lodge in the near future with the United States District Court in Colorado.
Please correct all deficiencies identified on the enclosed checklist. To date, EPA has not
received an FRP for the Rawlins railyard that has addressed those deficiencies.

      If response to these findings will be provided as updated pages to the latest plan
submission, please put your response in a format suitable for immediate incorporation into your
facility's FRP and indicate which pages are to be replaced. If you intend to provide a new FRP
for review, please include a cross reference for any changes to the plan that address the
deficiencies.

Please submit the revised FRP within ninety (90) Days of the Effective Date of the Consent Decree to the following:

> Donna K. Inman
> U.S. Environmental Protection Agency, 8ENF-UFO
> 1595 Wynkoop St.
> Denver, CO  80202

If you have any questions regarding the deficiencies noted on the enclosed checklist, please contact Ms. Melissa Payan, Oil Program Manager, at 303-312-6511.

Sincerely,

Craig Myers
Federal On Scene Coordinator

Enclosure:  FRP Regulatory Deficiencies List

2

FRP ID# FRP08C0010
September 27, 2011
Page 1 of 4

UPRR
1400 Douglas St.
Omaha, NE 68179

Contact:  Mark Ross
Company:  UPRR
Address: 300 West Front St, Rawlins WY 82301

Plan Type: FRP.  Plan Date: November 2007
Original Review Date:  10/27/10Reviewer: John West, START.
Update of John West's Review: 8/30/2011

The Facility Response Plan (FRP) cannot be approved until the following deficiencies identified
in the FRP are corrected:

> **Reviewer's Note:** A cross reference could resolve many of the current issues.

## 112 Appendix F Section 2.0: Response Plan Cover Sheet
Section 2.1     General Information
- Total storage of drums and transformers that contain oil

> **Reviewer's Note:** Drums and transformers are considered ASTs

## 112 Appendix F Section 1.1: Emergency Response Action Plan (ERAP)
Separate Section of FRP
Section 1.3.2  Response equipment list and location
Section 1.3.4  Facility response team list

> **Reviewer's Note:** The plan needs to state the location of response equipment and should
> include a minimum of 1000 feet of containment boom.  The plan lists only absorbent
> boom.  Also, provide evidence of contractual arrangements (i.e. copies of contracts) for
> emergency response contractors to verify the availability of resources.  FRP states this
> facility is dependent on the Rawlins FD but there is no contract in the FRP.

## 112 Appendix F Section 1.2: Facility Information
Section 1.2.6  Oil storage start-up date
Section 1.2.7  Facility operations description
                North American Industry Classification (NAICS) or Standard Industrial
                Classification (SIC) code
Section 1.3.2  Response Equipment
        Equipment Information
                Equipment list
                Equipment location
                Release handling capabilities and limitations (e.g., launching sites)

**Reviewer's Note**: See above comment regarding a letter from the Rawlins FD. The start-up date indicated in the plan needs to state the year of start-up. The NAICS or SIC must be listed in section 1.2.7. The plan needs to include an equipment list for both the Fire Department and the OSRO.

Section 1.3.4   Emergency Response personnel Information (personnel whose duties involve responding to emergencies, including oil discharges, even when they are not present at the site)
- Response personnel training (type and date)

**Reviewer's Note**: The plan must have a description of training and documentation of training for both the Fire Department and the OSRO.

Section 1.3.5.3        Community Evacuation Plans Referenced

**Reviewer's Note**: If there is no Community Evacuation Plan please state that.

Section 1.3.6   Description of QI Duties
- Activate internal alarms and hazard communication systems

**Reviewer's Note**: The reference to internal alarms and hazard communication systems should be moved to be in the required section. Alternatively, there could be a cross reference.

## Appendix F Section 1.4: Hazard Evaluation
Section 1.4.1   Hazard Identification
Section 1.4.1.5(a)  Description of transfers (loading / unloading) and volume of material

**Reviewer's Note**: Table 5 states that there is inadequate secondary containment volume for TNKO-0218.

Section 1.4.2   Vulnerability Analysis (See Appendix A – Calculation of the Planning Distance) Analysis of potential effects of an oil spill on vulnerable areas (Attachment C-111 to Appendix C to this part provides a method that owners or operators shall use to determine appropriate distances from the facility to fish and wildlife and sensitive environments. Owners or operators can use a comparable formula that is considered acceptable by the Regional Administrator (RA). If a comparable formula is used, documentation of the reliability and analytical soundness of the formula must be attached to the Response Plan Cover Sheet.)

| | |
|---|---|
| Section 1.4.2(2) | - Schools |
| Section 1.4.2(3) | - Medical facilities |
| Section 1.4.2(4) | - Residential areas |
| Section 1.4.2(5) | - Businesses |
| Section 1.4.2(7) | - Fish and wildlife |

Section 1.4.2(9)       - Endangered flora and fauna
Section 1.4.2(11)     - Transportation routes (air, land, and water)
Section 1.4.2(12)     - Utilities
Section 1.4.2(13)     - Other areas of economic importance

**Reviewer's Note:** This section is too general about what could be impacted. It should be very specific, especially concerning fish, wildlife and endangered species.

Section 1.4.3   Analysis of the Potential for an Oil Discharge
        Description of likelihood of release occurring
        - Tank age
        - Oil spill history for the life of the facility
        - Horizontal range of potential spill
        - Vulnerability to natural disaster
        - Other factors (e.g., unstable soils, earthquake zone, Karst topography, etc.)

**Reviewer's Note:** This section covered none of the required scenarios.

## 112 Appendix F Section 1.5: Discharge Scenarios

Section 1.5.1   Small Discharges (Description of small discharges addressing facility operations
        and components including but not limited to:
Section 1.5.1.1(7)       - Age and condition of facility components
        - Average most probable discharge for complexes
        - 1,000 feet of boom (1 hour deployment time)
        - Oil recovery devices equal to small discharge (2 hour recovery time)           - Oil
storage capacity for recovered material
Section 1.5.1.2 Small Discharges Scenarios Affected by the Response Efforts
Section 1.5.1.2(8)       - Available remediation equipment
Section 1.5.1   Medium Discharges
Section 1.5.1.1(7)       - Age and condition of facility components
        - Availability of sufficient quantity of boom
Section 1.5.1.2 Medium Discharges Scenarios Affected by the Response Efforts
Section 1.5.1.2(8)       - Available remediation equipment
Section 1.5.2   Worst Case Discharges (See Appendix A. When planning for the worst case
        discharge response, all of the factors listed in the small and medium discharge section of
        the response plan shall be addressed.)
        Facility Specific Worst Case Discharge Scenario
                Description of worst case discharges scenarios addressing facility operations and
        components including but not limited to:
Section 1.5.1.1(1)       - Loading and unloading operations
Section 1.5.1.1(2)       - Facility maintenance operation
Section 1.5.1.1(3)       - Facility piping
Section 1.5.1.1(4)       - Pumping stations and sumps
Section 1.5.1.1(6)       - Vehicle refueling operations
Section 1.5.1.1(7)       - Age and condition of facility components
112 Appendix E       - Sufficient response resources for WCD

              - Sources and quantity of equipment for response to WCD
              - Oil storage capacity for recovered materials
Section 1.5.1.2 Worst Case Discharge Scenarios Affected by the Response Efforts
Section 1.5.1.2(7)    - Weather or aquatic conditions (i.e., river flow)
Section 1.5.1.2(8)    - Available remediation equipment
Section 1.5.1.2(9)    - Probability of a chain reaction of failures

**Reviewer's Note:** In both the small and medium discharge scenarios the age and condition of the facility components is not discussed. Also the response equipment and sufficient quantities of boom are not discussed. The WCD scenario is overly general and needs details concerning probable modes of failure, response resources, weather conditions, or the probability of a chain reaction of failure. The worst case discharge scenario discussion should be moved to the required section. Alternatively, there should be a cross-reference. The facility is dependent on the Rawlins FD and OSRO. See the above comment about the Rawlins FD commitment letter.

## 112 Appendix F Section 1.7: Plan Implementation

Section 1.7.1   Identification of response resources for small, medium, and worst case spills (The determination and demonstration of adequate response capability are present in Appendix E of the Regulation
Section 1.7.1.1(5) - Additional response training
Section 1.7.1.1(5)    - Ability to implement plan, including response training and practice drills
Section 1.7.3   Containment and Drainage Planning (See Section II, 112.7(e)(1), 112.7(e)(7) and Appendix A)
Section 1.7.3(4) - Type and number of valves and separators in drainage system

**Reviewer's Note:** If the requirement does not apply (e.g., sections 1.7.3 and 1.7.3(4)), the plan should state this. The discussion in Sections 1.7.1.1(2) and 1.7.1.1(5) should be in the required sequence or cross-referenced.

## 112 Appendix F Section 1.8: Self-Inspection, Drills/Exercises, and Response Training

Section 1.8.1.2        Response Equipment Inspection

**Reviewer's Note:** This facility is entirely OSRO-dependent and therefore does not need inspect response equipment. There needs to be documentation that the equipment inspections are being done by the OSRO and Fire Department.

## 112 Appendix F Section 1.9: Diagrams

Section 1.9(1) Site Plan
Section 1.9(1)(A)    - Entire facility to scale
Section 1.9(1)(H)    - Location and capacity of secondary containment systems